This case is Henderson v. Berkman, and for the appellant is Mr. Healy, and for the appellant is Mr. Torricelli, you may proceed. Steven Healy on behalf of Edward Ben Henderson. I trust that your honors have read the briefs. I won't go too much into that, but just to hit the highlights. We all know what the standard of review is for summary judgment. If your honors decide it's abuse of discretion for a judicial admission, I think that's covered by the arguments that I'll make to you as well today. The first major topic I'd like to go to is the photos and videos that are part of the record, which your honors have seen, were properly authenticated. They were taken two days after the occurrence by one of the dismissed defendants, and that person, Natalie McGee, testified that they truly and accurately depicted the condition that she observed. I think there is case law in this district which covers an incident where photos were taken some two weeks after an incident at a golf course that balls had hit a clubhouse. I think there's no evidence or no argument that these photos don't depict the condition that was in existence on the day of the accident. They're consistent with the testimony of Mr. Henderson that a soldier or a roll-up course, which is the course of bricks that are narrowly laid, rolled back when he stepped on them with one foot. Counsel? Sure. I hate to ask a question so early in the oral argument here, but it might help us here get an appreciation of what actually happened because reviewing the record and the testimony that was given in deposition, it's not entirely clear, at least to me, what happened to cause Mr. Henderson's injuries here. In other words, how did this all occur? Okay, thank you for asking, your honor. The roll-up course, which is the narrow course of bricks depicted in photos, is set adjacent to bricks that are laid with the wide ends flat. There's mortar that is supposed to secure the roll-up or soldier's course to the other bricks. The mortar was loose when Mr. Henderson's right foot stepped up onto that course of bricks toward the front up from the city sidewalk. It came back and then he fell. Okay, and so in his testimony, I think the words rolled up are used. Yes, yes. And that's not entirely clear to me what that meant, but looking at the photograph of the soldier course and then the sidewalk surface, what you're saying is that he put his foot up on the soldier course and it actually tipped away so that the joint between the soldier course and the main walkway was then exposed? Yes, your honor. How did that then result in his fall? Well, it caused him to lose his balance. Then he fell and suffered a fracture to his hip area. Was it the whole row or just? Thank you, your honor. It was actually the whole row toward the area where he stepped up that rolled back. It wasn't an individual brick because mortar did secure the bricks within the row together. So did he trip or was it more that he then lost his balance? He lost his balance. And then fell? Yes, your honor. All right, yes. So it was almost like stepping on like a teeter-totter. He stepped on it, comes up, he falls, and it goes back down apparently. Correct. All right. Then it falls back into place. Now, the photo that you just held up that shows the rollout course or soldier's course is separated. There's no mortar securing it to the other areas. And there's another area that's above that to the right where Mr. Henderson did not step on that also shows mortar not securing a couple bricks to the adjacent area of the walkway. The mortar is the same age. So I think it's actually a question of fact for a jury to find whether the mortar holding or whatever that should have held the soldier's course to the other brick was actually effective before the accident. Now, you're arguing that the defendants are liable for a dangerous condition. Yes. And the dangerous condition being what? The loose step, if you will. Okay. Now, that then would then require that you establish that the step was loose prior to his fall. Yes. And as I gather from the record, the only evidence of that is your client's testimony that he believed the step was loose prior to the fall. Well, I think there's, in terms of the testimony, all the defendants denied that it was loose. My client was walking up for the first time in his life, and he didn't visually observe anything that was out of order. But I think the photographic evidence is what's key in this case. But, again, that's a photograph taken after the fall, so it certainly doesn't depict the condition prior to the fall. If his weight actually caused the step to become loose, then that would be shown that the condition that's shown in the photograph would be evidence of that. There's no photographic evidence of the condition of the walk prior to his fall, correct? That's right. And the expert, your expert, did not provide an opinion that the step was secure prior to the fall, or, excuse me, that the step was loose prior to the fall. Is that true? Well, I think he actually did because he came to the opinion that the mortar was deteriorated. But did he indicate the mortar that connected the soldier course to the main walkway was deteriorated, or was he commenting generally about the mortar in the walk surface? I think he was commenting specifically about mortar in the area that should have held the soldier course to the other bricks. Okay. So is it more of an inference that you're saying this court should take note of that the deteriorating nature or condition of the mortar generally should have led or leads to the conclusion that the soldier course was, in fact, separated from the main walk surface prior to your client's fall? Yes, yes. The inference from the photos shows, in areas where my client didn't step on, that mortar is not securing other bricks within the walkway to other bricks. If the soldier course became loose for the first time when your client stepped on it, is liability attached? I think it would, Your Honor, because the Decatur Code requires maintenance of the walkway. I think we cited a case in our… But how can there be any notice of a problem until it's manifested itself by popping up or rolling over, as you say? Sure. I think that the defendant, Jeffrey Burkett, who's an architect, testified in his deposition that he was aware that mortar would degrade gradually and typically not all at once. Mortar's all that's securing this row of bricks to the other area and preventing them from moving. We don't admit that these bricks were not loose before, but we still think there's a defect if the condition allowed them to become traumatically loosened when a person just stepped on them with one foot. That shouldn't exist on property because then it can lead to injury. And the video that's in the record demonstrates from one of the defendants who's been dismissed that she just stepped on the course with one foot and it rolled back with ease. I think it's a jury's province to determine whether they should believe the defendant's testimony that these were not loose. And I don't think it should be determined at the summary judgment stage. And I want to ask you then about that because it's then a matter of duty, what's reasonably foreseeable on the part of the homeowners here. And you have testimony, direct testimony by the occupant, one of the occupants of the home, that she would sit on this step, that they would traverse this step, and there was never any hint that it was loose. Just from a policy, public policy standpoint, what sort of duty are you placing on a homeowner or an occupant of residential premises to ensure that a feature of the property like this isn't dangerous? Because I'm trying to figure out what they should have done to determine that perhaps this step might be prone to tipping. Well, from a policy angle, I think that in Illinois, constructive notice is allowed because all a defendant would have to do is say a condition didn't exist when a jury should actually judge the credibility of that testimony. And when you have a plaintiff who's walking out for the first time in his life, and I think that logic dictates you don't stare at an area that you're walking at, you look ahead, down, around. And the seconds before, he didn't observe it, but immediately after the fall, he observes it. And photographic evidence and then the videos also show, I think a jury could make a determination, that what is depicted with this extreme deterioration of the mortar, that that was loose before the accident happened, that it wasn't a traumatic failure. So I think policy-wise, to leave a plaintiff in this type of case with no recourse to a jury would be unfair when a jury should be allowed to test the testimony of the defendant, view it with the photographs and videos, and their own common sense, basically, to come up and make a determination on that question of fact, that something was, in fact, loose before. Let's say, put aside whether or not the possibility that the bricks were loose prior to this fall, and just for the sake of what I'm asking here now, assume that the bricks weren't loose, but they were still intact, adherent to the remainder of the sidewalk, and it was his stepping on the brick that caused it to become loose. What should the defendants have done in order to identify the potential of that happening? Okay, well, I think the policy for that is the Decatur Code, which requires they maintain the property. The defendant architect, obviously just observing the condition, could know that it's deteriorated and could pose a hazard. The code requires that property that's not properly maintained be brought up to proper standards, maintained, that is, and includes walkways and stairs. So I think the policy is there from the code from Decatur. Inspect your property, see what's wrong, and remedy it if you have to. But I understand the questions. We're not conceding that this wasn't loose before. We feel that it was and that the photos would show. I keep kind of going back to this point because a picture tells a thousand words. From the plaintiff's angle, we don't have a camera or a video of the occurrence happening, so we have to rely on what we learn after the fact. And it shows other areas where there's no mortar connecting brick. So when you've got this area that's dependent upon the mortar to keep it in place, it indicates to us that this was loose before this happened. I think a jury could come to the conclusion that the Burkitt defendants had actual notice because of the fact that they were out in the area so much. I think it's a jury's question and determination to make that ruling. Have I satisfied your honor with what you want? Sure. And if you want to go on to your next point. Sure. Thank you, your honor. I don't think that there was any judicial admission because, in our view, there was one case cited in the briefs by the defense at the lead. The Pony case, which dealt with a person trying to depress a break, and the break would not move down. That was a judicial admission of the break's failure. In our case, Mr. Henderson testified that when he stepped down the course, it immediately moved back. The only way we could get a judicial admission in this case is if Mr. Henderson said, when I stepped on that course, it didn't move. But he didn't testify to that fact. The other way is that he said after the fact, well, when I observed it, the mortar was still attaching the course to the other bricks. He didn't say that. He was stunned. He had broken a bone. And he looked around, and he moved it with ease, and he showed a coworker. So we don't feel that there's any judicial admission on that point. I'm not even clear what the trial court was saying was judicially admitted. Can you clarify that for me? With respect, I think I was trying to find that out, too. I think that Mr. Henderson did not visually observe before this incident happened a problem, and that afterward the court's order said Mr. Henderson did know what happened. With respect to the trial court, I think Mr. Henderson did know what happened, and he testified he moved that. So I think the court was ruling that he didn't have notice of a defect, and that that was a judicial admission. But I would respectfully state that under the restatement, that's one of the elements that I've got to prove, that the plaintiff wouldn't be drawn to a defect so that he would know it. So if law requires the defendants protect him against something that's not true. Well, if he had known it was a defect, it would be open and obvious. Absolutely, Your Honor, absolutely. So from our angle, I don't think that there was any judicial admission. I hope I've answered you on that point. I think it was because there was no visual observation before. Well, and I think we have to be careful about how we're framing the issue here, how you're framing the issue, and how your opponent's going to address that, because a judicial admission would be as to an evidentiary fact. It's the conclusion that the trial court then drew from the evidentiary fact that you're, I think, disputing. The judicial admission was that your client testified that the mortar was intact. And from that, the trial court concluded that the mortar was actually bonding the soldier course to the course of bricks that composed the walkway at the surface, and therefore it wasn't loose. That was my understanding of the conclusion that the trial court drew and then sought to prevent your client from claiming otherwise, that, in fact, the step was already loose. Well, it's kind of twofold, because on one end, my client doesn't notice any defect. He's not studying that area. And the second he walks up for the first time in his life, he may have been asked generally, was there mortar between the bricks? He has said generally, but I don't think he ever stated before he stepped on it that he observed the mortar was, in fact, attaching the course to the other bricks. Well, and he never stated that. That's what I'm saying. He only made the statement that the mortar was intact. And from that, the trial court drew the conclusion that he was saying that it was adhering both the soldier course and the walkway surface bricks together. Yeah, I think what Mr. Henderson testified was that the mortar between the bricks and the course was, in fact, securing those bricks. That's not disputed. Right. I mean, it's here in the photo. You can see it. But the mortar that attached all the bricks and the course to the other bricks was not effective, and that was never admitted to by Mr. Henderson. In fact, any inference a jury could draw is immediately after he moves the course back. The mortar couldn't have been attached afterward either. So I hope it's clear that individual narrow bricks and the course, mortar is attaching them. Course to the other bricks, mortar is not attaching them. Why is it that your expert doesn't identify a specific defect relative to the step itself where the occurrence happened, where this soldier course of brick tip? Instead, he talks about the generally deteriorated nature of the walkway surface and how that's not a good idea to have that type of walk. But he doesn't opine as to a specific defect in the step itself. I think he does when he states in his report that the specific area where the fall occurred posed a defect to Mr. Henderson, and it was that loose mortar. I think if you look at the photos, you'll see the mortars deteriorate. That's not what the report says. You extrapolate from the report to reach your conclusion. I get that, but the actual words of the report don't say that. Understood, but I don't think we have to have expert testimony in a premises case. Either way, I think we can establish defect through photographic evidence. I think the report does just state that the mortar is decrepit. There's ants growing under the brick. There's weeds growing out of the joints. That indicates that there's a deteriorated condition. Your analysis is, if you were to rank the character of the evidence here in terms of the most persuasive, indicating that there was a defect in this step, it would be this photo. From that photo, the fact finder could determine that the mortar was in a deteriorated condition and likely that the step itself was loose, as opposed to your expert. I would think that it's the photo. The video is very persuasive as well. And also the expert's report that addresses code violations, that specifically states there's a defect in the area of the step and that it was not maintained pursuant to the code. I think those would be the main arguments. I also think that constructive notice through the report, where the expert stated that this condition existed for a substantial period of time, that that's within the report and it covers what's required for constructive notice. You're out of time and you'll have additional time to rebuttal. Thank you, Your Honors. I appreciate it. May it please the Court, counsel. I'm here on behalf of the defendants, Your Honors, Jeffrey and Gretchen Brickett. And before I begin my argument, I'd like to address that judicial admission issue. I'm not sure that that was the same take I had it. I think the court, there's a judicial admission through the pleadings, and then there's a general admission through testimony, either trial or deposition, the way I see it. So I don't know if that's a misnomer or not. But I think what the court meant was that the defendant, excuse me, the plaintiff himself conceded that he saw nothing about the premises, specifically this soldier robe that led him to believe that it was defective. And from that, the court determined that that was somehow a judicial admission. I think Your Honor's correct when you say that's evidence that could go to the conclusion of the finding either as a matter of law or as a matter of fact that there was no negligence. Okay, so the judicial admission is the plaintiff saw nothing. I don't know that that constitutes a judicial admission. I'm not sure. So what does that mean? I'm not hung up on that. I don't know that, you know, the trial court decided to characterize the facts, in part at least, the plaintiff's testimony as a judicial admission. I don't know that that's the case. I think that it goes to the issue of notice. It goes to the issue of unreasonable condition. But I don't know that it's a judicial admission, and I don't think it matters. Because the overarching issue in this case is whether it was an unreasonably dangerous condition that the defendants knew or constructively had full or constructive knowledge. And on that count, the evidence is clear, going back to the summary judgment standard and genuine issues of material fact. Here's the testimony. Here's the testimonial evidence. No one disputes that the defendants themselves had no knowledge, neither the direct defendants, which I represent that are here today before you, nor the defendants that were dismissed. Remember, there was a leasehold situation, a sale of the house. Both these individuals had lived or were about to live on the premises. They knew it. Neither of those four individuals, both husband and wife, knew that there was a defect. They're co-defendants, nor me today. The plaintiff himself joined in the choir when he testified at length that he didn't know about it. On page 14, I won't belabor the testimony, but it's outlined in page 14 of the brief, plaintiff's brief. Didn't know anything about it, couldn't tell, couldn't see it, et cetera. So isn't the question whether your client should have known about it? Well, I can turn to that as well. We know there was no actual notice, and I suggest there's nothing to indicate by the nature of this alleged defect, since it wasn't unreasonably dangerous, without begging the question, Your Honor, that they should have known. I don't think anything constructively. As a matter of fact, they lived in that residence for some time. They said they sat on it, they traversed it. Actually, the plaintiff traversed it the same day with his cohort, and I think through his own amazement, actually showed what had happened after the fact. So no, I don't think there's any set or any facts present that would constitute constructive knowledge or would allow a jury to determine that they could, other than speculation and conjecture. The public policy issue is an important one. I think that a finding that there's a genuine issue of material fact in this case would essentially impose a duty on the homeowner to make an annual or periodic home inspection to find such a latent defect. We haven't talked about latent defects. But they had a recent home inspection. They did. It had a trip hazard or something like that. Actually, Judge, really, to me, a non-sequitur in as much as I don't relate anything to that, just a public policy argument, you'd have to impose that to find such a defect. Speaking to that, it didn't find anything to do with the defect of which is complained of today. If you review that, maybe a general comment that brick deteriorates, mortar deteriorates, but nothing that specifically or even, I think, remotely points to this defect. And likewise, that's the same quality of evidence that you find with the expert witness, some vague remote suggestion that mortar deteriorates and it will deteriorate, and by gosh, that's why we have codes, but nothing about the actual cause, the cause and fact of the trip. So, yeah, we know that mortar deteriorates. We know it's all over the world. This case doesn't even give rise to the types of cases your honors are usually looking at, de minimis rule, or at least we have a defect. We're just judging how bad it is. It's not a case where you've got a crack, a crevice that's observable, the court has to construe whether this is actionable or not. We've got an absolutely latent defect only manifested at the moment, the very moment the plaintiff steps on it. So to speculate that anyone before him, without this incident, could have determined that it existed or imposed such a duty on anyone would be essentially to impose, I think, Judge, almost strict liability, to impose on someone to be omniscient in their guarding of their premises. And this court and other courts have written many decisions regarding the omniscient. We're not being sure of our property. This is as close as it can get, your honor, given the latent defect. I think that plaintiff, with all due respect, is dancing on the head of a pin when he suggests that he can fix these problems with his expert. He's trying to repair the problems through a resort to the expert to attempt to say what none of the witnesses could, or even get close. So, Judge, there's no unreasonable risk of harm. That's from the Gadows case. I think that's through the restatements. Those are requirements. I think we've got to show actual or constructive notice. There is absolutely no evidence to show actual, and I suggest no quality evidence or no evidence to create a genuine issue of material fact with regard to constructive notice. One could speculate, Judge, that if someone would have sat differently on it and it moved, that we'd have notice. Some could speculate that if it manifested a clear crack or crevice that was evident, then it would be constructive. We don't have any of that. The trial court was right when it determined that it was critical that the plaintiff himself didn't see the defect. And if he calls that a judicial admission, I think he's in error. But, again, I don't think that's the big point. That's an evidentiary issue. So, Judge, from my perspective, the case isn't closed. I didn't discuss the minimus rule, and I didn't discuss latent defect in the brief. But as I sat there, I realized that maybe somehow, at least inferentially, these issues may have something to do with this case. Because in terms of the minimus, I don't see how the minimus factors into this. This owes him a tripping. I didn't argue it in my brief, Judge. And the only reason I said that is we don't even have something that we can look at to determine what the defect was. We've got something that manifested itself only at the time that the incident occurred. And you're correct. We don't know. It would be speculation whether that defect occurred as a result of him stepping out at that very moment. And if you can't prove that it wasn't, then you certainly can't prove your case. How do you answer this, then, from the appellant's standpoint? And that is, you look at this picture, you see obvious deterioration of the mortar joints, weeds growing up, mortar missing. Therefore, based strictly on the photographic evidence alone, the homeowner should be suspicious of any other mortar joint and whether or not the integrity is still there. So just based on the photographic evidence alone, that raises a fact issue. Not a crevice. It's not the situation, Judge, what I encountered when I walked up to the appellate court today. Crevices in the sidewalk, cracks in the roadway. Those are obvious. It wasn't that defect that caused the incident. You ask plaintiff's counsel what was the cause, and he told you, it flipped off. I didn't trip over it. It flipped and it caused me to disorient, and as a result I lost my balance. So the very nature of the defect, as you indicate, as being observable, was not the type of defect that caused the incident, if you ask me. And back to the insurer of the property, I would suggest. There was also a point made in the plaintiff's brief, and I'm going to ask Mr. Healy if he would, in rebuttal, address this as well. In the brief, there was also a suggestion made that there was improper support of that soldier course. So underneath the soldier course, there was improper support that would allow, if there was a break in the mortar joint, the soldier course to tip. How would a homeowner that acquires the property and didn't construct this wall possess constructive knowledge of improper support, do you think? Not to toss the question, but it goes back to, again, Judge, my response is not an unreasonably dangerous condition. It's certainly not one that you would know of or should have known, especially if it's latent and it's below the surface of the ground. So, Judge, there are certain cases and certain defects that exist in this world, in the premises, where you simply would not have a reasonable expectation or a duty imposed on a homeowner. Now, if they knew of it, a prior incident, easily. I think that's the case. It's really a case of constructive notice, and I don't think there's anything that would have given them constructive notice in living there forever and actually traversing this and relying on the fact that it never was a problem is really proof that there was no constructive notice. Again, I'm begging the question, but there's no evidence that they should have known. Was the home inspector opposed? No. Okay. So, other than the report itself, we don't have any evidence as to what was deemed to be a trip hazard or a problem with the walkway. Speculation. Okay. Go ahead, Judge. Thank you. Nevado? Sure. Thanks, Brian. First off, the report said trip hazard, flat walkway. That's what he looked at. In terms of the improper support below and how would a homeowner have notice of that, perhaps not every homeowner would, but I think that an architect that builds or designs structures that live there for 10 years perhaps could. But I think the defect that they would have notice of, Gretchen Burke had testified at length about how often she went out to this area. March, April, she'd watch her children play. She specifically stated she was at that area many times when she said that she never observed a problem. I think a jury could say, wait, you were there a lot using this area, Jeffrey Burkett used the area, that you did, in fact, observe what we see in these photos that Mr. Burkett admitted does not happen overnight. It happens over time. So I think that they would be on notice of that defect being nothing to secure this course to the other bricks in the most prone area to problem, whether it be traumatic or non-traumatic looseness. I think that the condition that's observed there existed for a lengthy period of time, and I think it's definitely a hazard to have the step-up point from a city walk to a property have a loose step in effect, which is just waiting for someone to fall on it. So I think that there's notice of that. The jury could find actual. We think there's ample evidence of constructive notice. When Your Honor was looking at the photo, which we've had a chance to look at that condition far more than Mr. Henderson did. He's approaching it. He doesn't have that chance to look at it. He's got seconds as he's walking up. He's carrying tools. But Burkett's were out there all the time. In fact, Gretchen testified at length how many times she'd gone out there. She could have arguably seen this condition and alerted her husband or herself to remedy it. So I think we do have evidence of constructive or perhaps actual notice. I think the point I was getting at is that that photo doesn't show an open and obvious condition in Mr. Henderson. Well, there's no claim of contributory negligence here. This is more a matter of instead of there being a finding of contributory negligence or assumption of the risk, a lack of evidence demonstrating duty on the part of the homeowners because they didn't possess actual or constructive knowledge. So in terms of what your client saw or didn't see, as to the issues here, I don't think that's necessarily the key. I think for duty, though, we've had ample argument on that point today about what's depicted in a photo and a video and an admission that it didn't happen overnight from a homeowner. And although the de minimis cases, counsel said he didn't argue that, he did cite some case law as brief. Some courts even say in an entrance way that's easily monitored, the duty's not so great. So the de minimis rule may not apply in that situation. I'm only pointing that out that we have an entrance to a property that is observed repeatedly by the defendants and can be easily monitored. Thanks for your time. Okay, counsel, we'll take this matter under advisement and we'll recess until the readiness of the next case. Thank you.